Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EDUARDO MELÉNDEZ VELÁZQUEZ Y OTROS<br><br>**Parte apelante**<br><br>v.<br><br>ROBERTO VIQUEIRA RIOS Y OTROS<br><br>**Parte apelada** | **TA2026AP00331** | ***APELACIÓN***<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Ponce**<br><br>Caso Núm.:<br>**YU2021CV00249**<br><br>Sobre:<br><br>**DAÑOS Y PERJUICIOS** |

Panel integrado por su presidente el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de mayo de 2026.

Comparece ante nos Moshayra Vicente Cruz, en adelante, Vicente Cruz o apelante, solicitando que revisemos la *"Sentencia"* dictada el 20 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Ponce, en adelante, TPI-Ponce. En la misma, el Foro Primario desestimó sin perjuicio las causas de acción del caso de epígrafe.

Por los fundamentos que expondremos a continuación, *revocamos* el dictamen apelado.

**I.**

El día 20 de mayo de 2021, Eduardo Meléndez Velázquez y Adlin Ramos Mercado, en adelante, Meléndez-Ramos o apelados, presentaron una *"Demanda"* contra Roberto Viqueira Ríos y Vicente Cruz, y la Sociedad Legal de Gananciales compuesta por ambos, en adelante, SLG Viqueira-Cruz, en concepto de daños y perjuicios.[1] Ambas partes son vecinos, y sus propiedades colindan la una con la otra. En su petitorio, el recurrido alegó que la SLG

---
[1] SUMAC, Entrada Núm. 1.

Viqueira-Vicente incurrió en una construcción que perjudicó su propiedad. Por ello, solicitó la reparación de los daños, a costa de estos y la eliminación de un edificio accesorio creado por la SLG Viqueira-Vicente.

El 23 de septiembre de 2021, la SLG Viqueira-Cruz presentaron su *"Contestación a Demanda"*, en la que, además, presentó una *reconvención* y solicitó un interdicto preliminar y permanente.[2] El 25 de octubre de 2021, la Meléndez-Ramos presentó su *"Contestación a Reconvención"*.[3] Ese día, además, se opuso al interdicto solicitado en su contra.[4] Luego, siendo el 2 de noviembre de 2021, el TPI-Ponce declaró *"No Ha Lugar"* el interdicto solicitado por la SLG Viqueira-Vicente.[5]

Más adelante, el 13 de diciembre de 2021, las partes sometieron ante el Foro Apelado el *"Informe para el Manejo del Caso"*.[6] Durante el año 2022, las partes estuvieron ocupadas con los procesos de descubrimiento de prueba. Además, conforme a lo determinado por este Tribunal, se celebró la *Vista de Injunction* el 19 de julio de 2022, en la que se acordó pautar una fecha de continuación.[7] Sin embargo, este asunto nunca fue atendido.

Luego de varios asuntos, incluyendo una enmienda a la demanda de los apelados, una moción de desestimación por parte de la SLG Viqueira-Vicente que fue denegada y otro recurso interlocutorio ante este Tribunal,[8] el 2 de mayo de 2025 se celebró la *Vista de Conferencia con Antelación al Juicio*.[9] En la misma, las partes informaron estar encaminados a entablar un acuerdo, que

---

[2] SUMAC, Entrada Núm. 16.
[3] SUMAC, Entrada Núm. 20.
[4] SUMAC, Entrada Núm. 21.
[5] SUMAC, Entrada Núm. 23. La denegatoria del interdicto fue elevada a esta Honorable Curia, en la que un panel hermano revocó el dictamen del TPI-Ponce, por entender que la SLG Viqueira-Cruz no tenía otro remedio jurídico a su disposición. Concluyó, por lo tanto, que el Foro Primario debió celebrar una vista para dilucidar la procedencia de la concesión del interdicto. (KLAN202100951).
[6] SUMAC, Entrada Núm. 33.
[7] SUMAC, Entrada Núm. 92.
[8] KLCE202500150.
[9] SUMAC, Entrada Núm. 171.

incluía, la venta de la propiedad del recurrido a la SLG Viqueira-Vicente. El Foro Primario señaló la continuación de la *Conferencia con Antelación a Juicio* para el 18 de agosto de 2025.

El 17 de julio de 2025, la representación legal de la SLG Viqueira-Vicente presentó una moción informándole al Foro Primario que hubo un incidente entre Meléndez Velázquez y Viqueira Ríos, en el que este último perdió la vida.

Llegado el día señalado para la vista, las abogados de las partes comparecieron.[10] La representación legal de la apelante informó que esta continuaba interesada en comprar la propiedad del apelado. En la misma, el Foro Apelado constató que parte de los asuntos procesales no atendidos en el caso de marras es el interdicto solicitado por la SLG Viqueira-Vicente. Además, se informó que los apelados permanecen en espera de la tasación. El TPI-Ponce concedió noventa (90) días para que las partes realizaran la correspondiente sustitución de parte, entre otras cosas.

Ese mismo mes, siendo el 28 de agosto de 2025, se presentó la petición de la declaratoria de herederos de Viqueira Ríos.[11] El 30 de septiembre de 2025, se celebró una *Vista Sobre el Estado de los Procedimientos* en la que, entre otros asuntos, la apelante anunció que aún no había recibido la resolución del Foro Primario respecto la petición de declaratoria de herederos.[12] **El TPI-Ponce señaló una próxima vista para el 15 de mayo de 2026.**

El mismo día de la vista, el 30 de septiembre de 2025, el TPI-Yauco emitió la *"Resolución"* en la que declaró a la apelante y los hijos entre esta y el causante como la sucesión de Viqueira Ríos. La misma fue notificada el 9 de octubre de 2025.[13]

---

[10] SUMAC, Entrada Núm. 177.
[11] YU2025CV00440.
[12] SUMAC, Entrada Núm. 180.
[13] YU2025CV00440.

Más adelante, el 22 de diciembre de 2025, la representación legal de la apelante, presentó una moción informando vacaciones hasta el 8 de enero de 2026. Por ello, solicitó que, de presentarse algún asunto en el interín, se le concedieran veinte (20) días a partir del 8 de enero de 2026 para atender el mismo.[14] El 23 de diciembre de 2025, el TPI-Ponce tomó conocimiento de lo informado.[15]

Sin embargo, unas semanas posteriores al final de las vacaciones informadas, siendo el 20 de febrero de 2026, el TPI-Ponce emitió una *"Sentencia"* desestimando sin perjuicio el caso de epígrafe en su totalidad.[16] En su dictamen, razonó el Foro Primario que, al amparo de la Regla 22.1 de Procedimiento Civil, 32 LPRA, Ap. VIII, R. 22.1, procedía la desestimación automática, por no haberse sustituido a Viqueira Ríos en el pleito.

El 26 de febrero de 2026, Vicente Cruz solicitó al Foro Apelado que reconsiderara, y el 3 de marzo de 2026 el foro *a quo* declaró la misma *"No Ha Lugar"*. Inconforme, el 2 de abril de 2026, la apelante recurrió ante esta Curia haciendo los siguientes señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL DESESTIMAR LA TOTALIDAD DEL PLEITO, MOTU PROPRIO, SIN SOLICITUD DE PARTE, SIN APERCIBIMIENTO PREVIO, NI CONCESIÓN DE OPORTUNIDAD REAL PARA SER ESCUCHADA, EN VIOLACIÓN DEL DEBIDO PROCESO DE LEY.
>
> **SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL IMPONER LA SANCIÓN MÁS SEVERA DE FORMA ARBITRARIA E INCONSISTENTE, TRAS HABER CONCEDIDO MÚLTIPLES OPORTUNIDADES PROCESALES A LA PARTE DEMANDANTE, RESULTANDO EN UN TRATO DESIGUAL

---

[14] SUMAC, Entrada Núm. 181.
[15] SUMAC, Entrada Núm. 182.
[16] SUMAC, Entrada Núm. 183.

INCOMPATIBLE CON LOS PRINCIPIOS DE RAZONABILIDAD Y DEBIDO PROCESO DE LEY.

**TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL APLICAR DE FORMA AUTOMATICA Y FRAGMENTADA LA REGLA 22.1 DE LAS PROCEDIMIENTO CIVIL DE PUERTO RICO.

Mediante *"Resolución"* del 7 de abril de 2026, concedimos a la parte recurrida hasta el 22 de abril de 2026 para presentar su alegato, conforme a la Regla 7B(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 15, DPR ___ (2025). En esta misma fecha, los recurridos presentaron su *"Alegato en Oposición a Recurso de Apelación".*

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A. Apelación Civil

Las Reglas de Procedimiento Civil de Puerto Rico se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento de prueba, vista evidenciaria, sentencia, reconsideración, apelación, y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea,* 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel que se presenta ante un foro de mayor jerarquía cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Foro de Primera Instancia. Regla 52.1 y 52.2 de Procedimiento Civil, *supra*, *Freire*

*Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019). Véase, además, R. Hernández Colón, P*ráctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de certiorari. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, se reconoce que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones, cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017). Regla 13(A) del Reglamento del Tribunal de Apelaciones, supra, pág. 22; Art. 4.006(a) Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24y.

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del

proceso. *Bathia Gautier v. Gobernador*, 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).

### B. Sustitución de parte por muerte

En nuestro ordenamiento jurídico, la Regla 22.1 de Procedimiento Civil, 32 LPRA Ap. V R. 22.1, regula lo referente a la sustitución de partes en caso de que una de estas fallezca. *Bonilla Sánchez v. Orta et al.,* 2026 TSPR 32, 218 DPR ___ (2026); *Villanova v. Villanova*, 184 DPR 824, 838 (2012). Dicha disposición establece un procedimiento mediante el cual una persona que es parte en un pleito puede ser sustituida por otra, ocupando así la posición que tenía originalmente la persona sustituida. *Ruiz Mattei v. Commercial Equipment*, 214 DPR 407, 418 (2024); *Echevarría Jiménez v. Sucn. Pérez Meri*, 123 DPR 664, 684 (1989). Así pues, en lo atinente, la referida disposición establece lo siguiente:

> (a) Si una parte fallece y la reclamación queda por ello extinguida, se dictará sentencia para desestimar el pleito.
>
> (b) Si una parte fallece y la reclamación no queda por ello extinguida, cualquiera de las partes en el procedimiento o sus abogados o abogadas notificarán el fallecimiento al tribunal y a las otras partes dentro del término de treinta (30) días, contados desde la fecha cuando se conozca tal hecho. El tribunal, a solicitud hecha dentro de los noventa (90) días siguientes a la fecha de dicha notificación, ordenará la sustitución de la parte fallecida por las partes apropiadas. Los y las causahabientes o representantes podrán presentar la solicitud de sustitución del finado o de la finada, y dicha solicitud se notificará a las partes en la forma dispuesta en la Regla 67 y a las que no lo sean en la forma que dispone la Regla 4. La demanda se enmendará a los únicos fines de conformar la sustitución e incorporar las nuevas partes al pleito. Transcurrido el término sin que se haya solicitado la sustitución, se dictará sentencia para desestimar el pleito sin perjuicio.
>
> (c) De fallecer una o más partes demandantes, o ***uno o más partes demandadas***, que fueron partes en un pleito en que el derecho reclamado subsista sólo a favor de las demandantes o contra las partes demandadas que

sobrevivan, ***el pleito no finalizará***. Se notificará al tribunal el hecho de la muerte y ***el pleito continuará a favor o contra las partes sobrevivientes.***

*Bonilla Sánchez v. Orta et al.,* supra.

La interpretación jurisprudencial de la sustitución de parte por razón de muerte, aun desde la vigencia de la derogada regla del año 1979 – virtualmente idéntica – ha sido consistente. La misma ha sido maniobrada para "[atender] el interés público de que los asuntos en los tribunales se solucionen de forma expedita para evitar el perjuicio que la dilación pueda causar a las partes". *Echevarría Jiménez v. Sucn. Pérez Meri*, supra, pág. 685. Véase, además, *Ruiz Mattei v. Commercial Equipment,* supra, pág. 419; *Vilanova et al. v. Vilanova et al.,* supra, pág. 838.

Ahora bien, conforme a la precitada Regla, cualquier parte — por sí o a través de su representante legal— deberá notificar el deceso de una parte, dentro de los treinta (30) días de advenir en conocimiento de tal hecho. Una vez se realiza la notificación del fallecimiento, comienza a transcurrir el término de noventa (90) días para solicitar la sustitución de la parte correspondiente. Ahora bien, si la parte fallecida no es sustituida oportunamente, el pleito no puede continuar su curso y pudiese el Foro Primario proceder con su desestimación sin perjuicio. A esos efectos, el Informe de las actuales Reglas de Procedimiento Civil, supra, dispuso que "de no solicitarse la sustitución de la parte dentro del término establecido, el pleito ***podrá*** ser desestimado, sin perjuicio". Secretariado de la Conferencia Judicial y Notarial, *Informe de Reglas de Procedimiento Civil,* marzo 2008, págs. 252-253. (Énfasis nuestro). Véase, además, *Bonilla Sánchez v. Orta et al.,* supra.

Recientemente, nuestro Alto Foro, en su discusión de la Regla 22.1(b) de Procedimiento Civil, supra, estableció que "las

partes en un litigio ***deben obrar de buena fe y no dilatar innecesariamente el trámite judicial***, pues esto es contrario al principio que emana de la Regla 1 de Procedimiento Civil, *supra"*. *Bonilla Sánchez v. Orta et al.,* supra. (Énfasis nuestro). Justipreciamos que, lo anteriormente reseñado, apunta a que el Foro Primario deberá analizar, no sólo el cumplimiento matemático de los requisitos en la Regla 22.1 de Procedimiento Civil, *supra*, sino también el proceder de las partes en el trámite y el principio cardinal sobre la resolución de controversias en sus méritos.

En nuestra jurisdicción, la sucesión del causante es la parte con derecho u obligación de sustituir al litigante fallecido, sin embargo, cada uno de sus miembros debe ser traído al pleito como parte indispensable. *Blassino, Reyes v. Reyes Blassino,* 214 DPR 823, 837 (2024); *Vilanova et al. v. Vilanova et al.,* supra, pág. 839. Esto es, al sustituir a una parte por otra que no está en el pleito es necesario adquirir jurisdicción *in personam* sobre esa nueva persona, con el fin de que esta quede notificada de la acción y pueda ser escuchada y defenderse, si así lo desea. *Echevarría Jiménez v. Sucn. Pérez Meri,* supra, pág. 686.

### C. Desestimación

Los tribunales poseen la autoridad para desestimar una demanda, lo cual deben realizar de manera juiciosa y en circunstancias apropiadas. *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 264 (2021); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 298 (2012). Ello pues, se cataloga que la desestimación constituye la sanción máxima, o la pena de muerte procesal, contra una parte; en especial cuando la misma tiene el efecto de adjudicar un pleito en sus méritos. *VS PR, LLC v. Drift-Wind*, supra, citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 250. Por ello, nuestro ordenamiento jurídico favorece la política judicial de que

los casos se ventilen en sus méritos. *VS PR, LLC v. Drift-Wind*, supra; *HRS Erase v. CMT*, 205 DPR 689, 701 (2020); *Mercado Figueroa v. Mun. San Juan*, 192 DPR 279, 288 (2017). Tal principio ha de ir en armonía con el propósito de que los pleitos se tramiten de forma justa, rápida y económica. *Mercado Figueroa v. Mun. San Juan*, supra, pág. 288. Por tanto, desestimar un pleito desmesuradamente privaría al demandante de su día en corte para ejercer efectivamente aquellas causas de acción que tenga en contra de otra parte. *VS PR, LLC v. Drift-Wind*, supra.

Es por esto que, los tribunales están facultados con el poder de sancionar a las partes mediante distintos mecanismos, cuando, en desobediencia a sus órdenes sobre descubrimiento de prueba, atenten contra la sana administración de la justicia. La Regla 39.2 de Procedimiento Civil, *sobre la desestimación*, dispone lo siguiente:

a. Si la parte demandante deja de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud de la parte demandada podrá decretar la desestimación del pleito o de cualquier reclamación contra ésta o la eliminación de las alegaciones, según corresponda. Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos

que las circunstancias del caso justifiquen que se reduzca el término.

b. [...]

Así, la norma prevaleciente dicta que los tribunales gozan de discreción para decretar que la desestimación de una demanda sea *sin perjuicio*, la cual habilita una presentación posterior de la misma reclamación, excepto cuando tal pronunciamiento se fundamente en la falta de jurisdicción o la falta de parte indispensable, o que de otro modo exista alguna norma que disponga otro efecto. *VS PR, LLC v. Drift-Wind*, supra, págs. 266-267; *Souchet v. Cosío*, 83 DPR 758, 762-763 (1961).

La determinación de desestimar una demanda debe tomarse con juicio y cautela. *Mejías et al. v. Carrasquillo et al.*, supra, pág. 298; *Maldonado v. Srio. de Rec. Naturales*, 113 DPR 494, 498 (1982). Además, debe también considerarse que:

> [L]a desestimación de un caso como sanción, debe prevalecer ***únicamente*** en situaciones extremas en las cuales haya quedado demostrado de manera clara e inequívoca la desatención y el abandono total de la parte con interés ***y después que otras sanciones hayan probado ser ineficaces en el orden de administrar justicia y, en todo caso, no debería procederse a ella sin un previo apercibimiento***.
>
> *Mun. de Arecibo v. Almac. Yakima*, 154 DPR 217, 222 (2001).
> (Citas omitidas).

El requisito de realizar un previo apercibimiento a la parte antes de proceder con la desestimación es parte del debido proceso que la ley ha reconocido para estas circunstancias. Según las expresiones de nuestro más alto foro:

> La experiencia señala que en la gran mayoría de los casos [...] las partes no están enteradas de la actuación negligente de sus abogados y, al advenir en conocimiento de ello, la situación es corregida de inmediato. Una parte que haya sido informada y apercibida de esta clase de situación y no

tome acción correctiva, nunca se podrá querellar, ante ningún foro, de que se le despojó injustificadamente de su causa de acción y/o defensas.

*Maldonado v. Srio. de Rec. Naturales*, supra, pág. 498.

Por lo tanto, "en ausencia de contumacia o dejadez extrema, la negativa de un tribunal a emplear sanciones menos drásticas que la desestimación, ***constituye una privación al derecho constitucional a ser oído que es corolario del debido proceso de ley***". J. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 2012, pág. 252 citando a *Societe Internationale v. Rogers*, 357 US 197 (1958). (Énfasis nuestro.)

El concienzudo uso del mecanismo procesal de la desestimación tiene el potencial de adelantar los fines justicieros que persiguen los tribunales. Sin embargo, el desmesurado uso de estos puede convertirse en una cortapisa para la justicia. *Sánchez Rodríguez v. Adm. de Corrección*, 177 DPR 714, 721 (2009).

**III.**

La apelante recurre ante nos planteando que el TPI-Ponce erró en su *"Sentencia"*. Aduce que fue un abuso de discreción desestimar el pleito de epígrafe, en el que ella es una demandada-reconveniente. Sostiene, también, que la desestimación es la sanción procesalmente más severa, y en este caso, resulta incompatible con el debido proceso de ley. En síntesis, aduce que la desestimación del TPI-Ponce constituyó un abuso de discreción. *Le asiste la razón.*

Vicente Cruz hace *tres (3) señalamientos de error*, que por su estrecho vínculo discutiremos en conjunto.

Como pudimos observar, la Regla 22.1 de Procedimiento Civil, supra, contempla tres (3) escenarios en los que, *por muerte*, se podría sustituir una parte y las consecuencias de no hacerlo. Por no ser pertinente el primero de estos escenarios, puesto que la

causa de acción no se extinguió con la muerte de Vaqueira Ríos, analicemos los otros.

En el segundo de estos escenarios, cuando muere una parte y la reclamación a su favor o en su contra no se extingue, su sucesión viene obligado a sustituirlo en el pleito. Para ello, este inciso dispone que la muerte debe ser notificada en un término de treinta (30) días desde que se conozca el hecho, y la sustitución de este debe realizarse en noventa (90) días. Dispone, además, que si la sustitución no se realiza dentro de este último término, el Foro Primario podrá desestimar sin perjuicio.

Ahora bien, el último de estos incisos dispone que, con relación a las partes que sobrevivan a la parte fallecida, ***el pleito continuará a su favor o en su contra y "no finalizará".***

En el caso de autos, la sucesión de Viqueira Ríos venía obligada a solicitar la sustitución de este, de manera que el Foro Apelado pudiera adquirir jurisdicción sobre estos. Si bien es cierto que el derecho estatutario le confiere discreción a los Tribunales para desestimar sin perjuicio los casos en donde no se haya efectuado la sustitución de parte por muerte, no podemos eludir los linderos interpretativos con los que el Tribunal Supremo de Puerto Rico ha cercado esta facultad. Una evaluación sosegada del tracto y el expediente del caso de epígrafe nos compele a concluir que la sensatez, los principios sobre la adjudicación meritocrática y la economía procesal hacía un llamado a otro curso de acción. O, en su defecto, se justificaba la oportunidad de rectificar.

Del expediente surge que la apelante le informó con prontitud al TPI-Ponce la muerte de Viqueira Rios. Muy poco después, la petición de declaratoria de herederos fue presentada e informada al Foro Apelado en la vista del 30 de septiembre de 2025. Por su parte, el apelado sostiene que, durante esta audiencia, la parte apelante le indicó erróneamente al Foro

Primario no contar con la resolución aun, cuando ese mismo día se expidió la misma. Sin embargo, una simple evaluación en SUMAC revela que no fue hasta el 9 de octubre de 2025 que la *"Resolución"* en cuestión fue notificada.

Este Tribunal considera como una muestra de interés y diligencia, las gestiones realizadas oportunamente respecto a la declaratoria de herederos y las expresiones de la representación legal de la SLG Viqueira-Vicente en la última vista celebrada. Más allá de ello, el tiempo entre el fin de las vacaciones anunciadas por la representación legal de la apelante y la *"Sentencia"*, nos preocupa significativamente, puesto que apena había transcurrido un mes y medio. Máxime cuando estaba en calendario una *Vista Sobre el Estado de los Procedimientos* pautada para el **15 de mayo de 2026.**

Conviene recordar que en este caso todas las partes son demandantes y demandados, en virtud de la demanda original incoada por Meléndez-Ramos, y la reconvención de la SLG Viqueira-Vicente. Por ello, nos parece contrario a toda naturaleza procesal penalizar no solo a la parte reconveniente por el incumplimiento con la sustitución de parte dentro del término dispuesto, sino también a los demandantes originales. Permitir la desestimación de una causa de acción porque la Sucesión de la parte demanda en la misma incumpla con la Regla 22.1 de Procedimiento Civil, *supra*, equivaldría a configurar, al amparo de la precitada regla, un mecanismo estatutario para burlar reclamaciones.

Concluimos que, a la luz de la normativa antes reseñada, las particularidades de este caso y en aras de promover la pronta adjudicación del caso de epígrafe, procede que se le permita a la Sucesión de Viqueira Ríos proceder con la sustitución de parte, de

modo que el Foro Apelado adquiera jurisdicción *in personam* de estos.

Por otro lado, evaluado el tracto procesal y los escritos de las partes, justipreciamos que, con relación a Vicente Cruz, la demanda en su contra y la reconvención incoada por la SLG Viqueira-Vicente, no debieron ser desestimadas.

Como vimos, el derecho a tener su día en corte y a ser oído, son principios cardinales del debido proceso de ley. Además, la norma estatutaria y jurisprudencial sobre la desestimación ha delimitado la misma como un remedio de última instancia. Por eso, entendemos que la desestimación en su totalidad de, tanto la demanda de los recurridos como la reconvención de la apelante, fue una extralimitación discrecional por parte del Foro Primario.

**IV.**

Por los fundamentos que anteceden, *revocamos la "Sentencia" apelada,* y devolvemos el caso al TPI-Ponce para la continuación de los procedimientos, conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones